UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ELIJAH J. GUICHARDO, CARMEN C.
GUICHARDO, and CARMEN R. YENTES
PUESAN,

                Plaintiffs,

                v.

LANGSTON HUGHES QUEENS LIBRARY, et
al.,

                Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-2866 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Elijah J. Guichardo ("Elijah"), Carmen C. Guichardo and Carmen R. Yentes Puesan, proceeding *pro se*, commenced the above-captioned action on May 14, 2015, against 147 Defendants, including eight public libraries and two restaurants located in Queens, New York and multiple employees of each of the foregoing entities. (Compl. 1–7,[1] Docket Entry No. 1.) The 128-page Complaint asserts claims pursuant to 42 U.S.C. § 1983 and alleges violations of: (1) the First and Fourteenth Amendments to the United States Constitution; (2) Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* ("Title II"); (3) Title III of the Civil Rights Act of 1964, 42 U.S.C. § 2000b *et seq.* ("Title III"); (4) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"); (5) Title VIII of the Civil Rights Act of 1964, 42 U.S.C. § 2000f ("Title VIII"); and (6) Articles 18, 19, 26 and 27 of the Universal Declaration of Human Rights (Compl. 8, 10–11.) Plaintiffs also appear to assert various

---

[1] Because the Complaint is not consecutively paginated, all citations to pages of the Complaint refer to the Electronic Document Filing System ("ECF") pagination.

state-law claims including negligence and intentional infliction of emotional distress. (*Id.* at 8, 11.) Plaintiffs seek monetary damages; "[v]indication of Elijah's name and his family's" name; the "[s]uspension and revocation of" the "titles, licenses, memberships, ownerships, properties, etc." of the "[l]isted [s]taff [m]embers;" and the closing of the "public accommodations or facilities or businesses" named as Defendants. (*Id.* at 8.) The Court grants Plaintiffs' requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and, for the reasons set forth below, dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs are granted leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

**I. Background**

Plaintiffs generally allege that eight branches of the Queens Library and various employees at each location violated Plaintiffs' rights by engaging in "racial profiling or intentional discrimination on the basis of race, color, sex, religion or national origin." (Compl. 10.) The 128-page Complaint consists of (1) a twelve-page pleading, (*id.* at 1–12); (2) a twenty-four page "[f]actual [c]hronological [s]ummary" that lists the dates and descriptions of various incidents, some of which have no obvious relation to the other charges in the Complaint,[2] (*id.* at 13–36); and (3) various complaints filed by Plaintiffs with, among others, the New York State Attorney General's Office, the Civil Rights Division of the United States Department of Justice and the Better Business Bureau of Metropolitan New York, (*id.* at 37–128). The Complaint does not include a "Statement of Claim." Instead, the twelve-page pleading repeatedly directs the reader to "read [the] attachments" without indicating the particular page or

---

[2] For example, included among the items listed in the "[f]actual [c]hronological [s]ummary" is an entry regarding "incidents at Elijah's chiropractor" in which Plaintiffs allege that they "started to notice a different treatment from Elijah's chiropractor . . . towards" Plaintiffs. (Compl. 26.)

2

pages that are relevant. (*See, e.g.*, *id.* at 8, 10–11.) The "[f]actual [c]hronological [s]ummary" is primarily comprised of entries describing incidents in which Plaintiffs were allegedly mistreated at various public libraries. Among the alleged incidents are the following four representative entries: (1) at the East Elmhurst Library on April 1, 2014, Elijah experienced difficulty using his library card and when Elijah complained to library staff, a library employee yelled at Elijah, (*id.* at 13); (2) at the East Elmhurst Library on May 9, 2014, Carmen C. Guichardo's library card was "unscannable" and Elijah was not properly assisted by two African-American library employees, (*id.* at 14); (3) at the Langston Hughes Library on May 28, 2014, Elijah experienced difficulty using one of the library's computers and when Plaintiffs complained about the computer, a library employee became "aggressive, discriminatory, [and] hostile," (*id.*); and (4) at the Jackson Heights Library on June 25, 2014, a "crazy woman" who "seemed to be Hispanic" was harassing Elijah and, when Plaintiffs complained to one of the library's managers, library staff called the police who, upon responding, "threw [Plaintiffs] out of the library" notwithstanding Plaintiffs' "fruitless" attempts to explain that the "crazy woman had been provoking and harassing" Elijah, (*id.* at 16).

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*,

556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Additionally, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411 (2d Cir. 2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . ." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

     **b.   Rule 8(a) — short and plain statement of claim**

The Complaint fails to include a "short and plain statement of the claim" showing that Plaintiffs are entitled to relief. Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "statement should be plain because the principal function of pleadings under the Federal Rules of Civil Procedure is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted); *Swierkiewicz v.*

4

*Sorema, N.A.*, 534 U.S. 506, 512 (2002); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (defining "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial" (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995))); 15 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1281 (3d ed. 2007) (noting that "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage"). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

When a complaint fails to comply with this rule, the district court may dismiss it *sua sponte*. *Simmons*, 49 F.3d at 86 ("When a complaint fails to comply with [Rule 8's] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial."). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Salahuddin*, 861 F.2d at 42); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of "88-page, legal size, single spaced *pro se* complaint" that "contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension" and thus "failed to comply with the requirement of Rule 8"); *see also Kalter v. Hartford Ins. Co. of the Midwest*, 24 F. Supp. 3d 230, 235 (E.D.N.Y. 2014) (dismissing complaint *sua sponte* because it contained "only broad, vague and generalized allegations" and thus failed to comply with Rule 8); *Henry v. Brown*, No. 14-CV-2828, 2014 WL 2112699, at *1

5

(E.D.N.Y. May 19, 2014) (dismissing a *pro se* complaint that alleged "no facts" to support a federal cause of action against the named defendant); *Fisch v. Consulate Gen. of Republic of Poland*, No. 11-CV-4182, 2011 WL 3847398, at *2 (S.D.N.Y. Aug. 30, 2011) (dismissing 476-page complaint that was "indisputably prolix and often unintelligible" because "[n]either this Court, nor any party, should have to wade through endless pages of narrative to discern the causes of action asserted and the relief sought").

Plaintiffs fail to state their claims in the twelve-page pleading portion of the Complaint and instead refer generally to the 116 pages of attached documents which, as explained above, are lengthy, confusing and, in some places, seemingly irrelevant. As a result, it is almost impossible to discern the precise nature of Plaintiffs' claims from the pleading and attachments, and the Complaint is not sufficient to allow Defendants to respond in a meaningful manner. The Complaint is therefore dismissed without prejudice. *See Simmons*, 49 F.3d at 86. The Court nevertheless attempts to decipher the Complaint and addresses the standard for the various claims mentioned in the Complaint.

### c. Civil Rights Act of 1964

Plaintiffs allege that they were subjected to discrimination in violation of Titles II, III, VI and VIII of the Civil Rights Act of 1964. (Compl. 8, 10–11.)

#### i. Title II

Plaintiffs allege that Defendants violated Title II by engaging in and "allowing racial profiling or intentional discrimination on the basis of race, color, sex, religion or national origin in places of public accommodation[]." (*Id.* at 10.) Title II provides that, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, . . . without discrimination or

segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "[T]he overriding purpose of Title II [was] to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Stone v. N.Y. Pub. Library*, No. 05-CV-10896, 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008) (internal quotation marks omitted) (quoting *Daniel v. Paul*, 395 U.S. 298, 307–08 (1969)). The Court assumes for purposes of the instant analysis that the restaurants and public libraries named as Defendants are places of public accommodation.[3]

The Second Circuit has indicated that discrimination claims under Title II are subject to the same analysis as discrimination claims under 42 U.S.C. § 1981.[4] *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104–06 (2d Cir. 2001) (reviewing grant of summary judgment in favor of defendants on plaintiffs' discrimination claims under § 1981 and Title II and concluding that,

---

[3] "Private establishments" are expressly exempted from the Title II requirements. 42 U.S.C. § 2000a(e) ("The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public . . . ."). Restaurants and "place[s] of exhibition or entertainment" are "places of public accommodation" provided that their operations affect commerce or they engage in discrimination or segregation that is supported by State action. *Id.* § 2000a(b), (b)(2), (b)(3). Title II provides that a restaurant's operations affect commerce if "it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, . . . has moved in commerce." *Id.* § 2000a(c). The operations of a place of exhibition or entertainment affect commerce if "it customarily presents . . . sources of entertainment which move in commerce." *Id.*

[4] As distinct from Title II, 42 U.S.C. § 1981 "protects against discrimination solely on the basis of race." *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 13 n.4 (2d Cir. 2013). Section 1981 states:
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

because plaintiffs failed to establish that they were denied service under circumstances giving rise to an inference of discrimination for purposes of § 1981 claim, plaintiffs' Title II claim also failed); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1340–41 (2d Cir. 1974) (reviewing grant of summary judgment in favor of defendant on plaintiffs' discrimination claim under Title II and considering whether challenged policy was racially discriminatory based on "the analysis [the court was] called upon to make by" Title VII and § 1981 cases); *Stone*, 2008 WL 1826485, at *3 ("The Court of Appeals has indicated that § 2000a claims may be analyzed using the framework established for claims under 42 U.S.C. § 1981.").

To state a claim under section 1981, a plaintiff must allege, among other things, "an intent to discriminate on the basis of race by the defendant . . . ." *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). At the motion to dismiss stage, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *Bentley, Jr.*, 599 F. App'x at 396 ("To survive a motion to dismiss, a plaintiff [asserting claims under § 1981] must specifically allege the circumstances giving rise to a plausible inference of racially discriminatory intent." (citation and internal quotation marks omitted)). "A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." *Bentley, Jr.*, 599 F. App'x at 396.

Although Plaintiffs allege that their rights under Title II were violated due to "intentional discrimination on the basis of race, color, sex, religion or national origin," Title II does not

prohibit discrimination on the basis of sex. *Seidenberg v. McSorleys' Old Ale House, Inc.*, 308 F. Supp. 1253, 1255 (S.D.N.Y. 1969) ("[T]here exists no proscription against discrimination on the basis of sex in public accommodations [under Title II]."). While Title II does preclude "discrimination or segregation on the ground of race, color, religion, or national origin," 42 U.S.C. § 2000a(a), Plaintiffs do not specify whether they allege discrimination on some or all of these grounds and the Complaint does not describe Plaintiffs' race, color, religion or national origin.

Plaintiffs describe a number of incidents and allege in conclusory fashion that the Defendants involved in each incident were motivated by discriminatory intent. (*See, e.g.*, Compl. 16 (asserting that Defendant Waters of the Jackson Heights Library acted "out of intentional discrimination, retaliation and intimidation" without alleging any facts to support a plausible inference of discriminatory intent).) Such allegations are not sufficient to plausibly allege intentional discrimination of any kind. Therefore, Plaintiffs fail to state a claim under Title II. *See Mian*, 7 F.3d at 1088 (concluding that plaintiff failed to adequately plead § 1981 claim because the "complaint fail[ed] to offer more than conclusory allegations that [plaintiff] was discriminated against because of his race"); *cf. Cha v. Hooters of Am., LLC*, No. 12-CV-4523, 2013 WL 5532745, at *5 (E.D.N.Y. Sept. 30, 2013) (concluding on a motion to dismiss discrimination claims under Title II asserted against restaurant that "[t]he racial epithet on [p]laintiff's receipt is evidence that he was denied full and equal enjoyment of services on the grounds of his race").

    ii.    **Title III**

Title III provides for "actions by the Attorney General for desegregation of public facilities . . . ." 15 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3573 (3d ed.

2007). Title III states in relevant part:

> Whenever the Attorney General receives a complaint in writing signed by an individual to the effect that he is being deprived of or threatened with the loss of his right to the equal protection of the laws, on account of his race, color, religion, or national origin, by being denied equal utilization of any public facility which is owned, operated, or managed by or on behalf of any State or subdivision thereof, . . . and the Attorney General believes the complaint is meritorious and certifies that the signer or signers of such complaint are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief . . . , the Attorney General is authorized to institute for or in the name of the United States a civil action . . . for such relief as may be appropriate . . . .

42 U.S.C. § 2000b(a).

Plaintiffs allege that Defendants "treated and permitted that Elijah and family be treated differently from the rest and also be treated with malice by their staff members and clients because of his and our race." (Compl. 10 (internal parenthetical stating "please read attachments" omitted).) Plaintiffs fail to state any claims under Title III. First, Plaintiffs have not sufficiently alleged that any of the Defendants is a "public facility which is owned, operated, or managed by or on behalf of any State or subdivision thereof," nor do Plaintiffs allege that they were denied equal access to any such facility. 42 U.S.C. § 2000b(a); *cf. United States v. Cty. of Wyandotte*, 343 F. Supp. 1189, 1191, 1204 (D. Kan. 1972) (concluding that jail maintained by Wyandotte County, Kansas was a "public facility" for purposes of action instituted by Attorney General under Title III), *rev'd on other grounds*, 480 F.2d 969 (10th Cir. 1973). Second, a number of courts have concluded that there is no private right of action under Title III. *See Jefferson v. City of Fremont*, No. 12-CV-0926, 2012 WL 1534913, at *3 (N.D. Cal. Apr. 30, 2012) (collecting cases and noting that a "number of courts have held that, because [b]y its plain terms, Title III . . . authorizes the *Attorney General* to bring suit to vindicate equal protection rights[,] . . . Title III does not create a private right of action" (citation and internal quotation

marks omitted)). Finally, Title III provides for a cause of action by the Attorney General where the individuals subjected to discrimination are unable to initiate and maintain a legal proceeding, which is not the case here.[5] *See Garay v. Jones*, No. 85-CV-6258, 1988 WL 64883, at *2 (S.D.N.Y. June 13, 1988) (dismissing plaintiff's claims under Title III because "plaintiff [was] already able to maintain a legal proceeding, as evidenced by the present action").

Plaintiffs' claims under Title III are therefore dismissed for failure to state a claim.

### iii. Title VI

Title VI provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege that "(1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with that program or activity." *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000), *aff'd*, 62 F. App'x 28 (2d Cir. 2003). For purposes of the third prong, a plaintiff must ultimately show that the "discrimination was intentional and . . . was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations

---

[5] Title III provides that the Attorney General may deem a person or persons "unable to initiate or maintain appropriate legal proceedings" when:
> such person or persons are unable, either directly or through other interested persons or organizations, to bear the expense of the litigation or to obtain effective legal representation; or whenever he is satisfied that the institution of such litigation would jeopardize the personal safety, employment, or economic standing of such person or persons, their families, or their property.

42 U.S.C. § 2000b(b).

and quotation marks omitted).

Plaintiffs allege that they were subjected to discrimination "by recipients of federal funds on the basis of race, color and national origin." (Compl. 10.) Plaintiffs do not specify which Defendants receive federal financial assistance. Plaintiffs also fail to allege that they were intended beneficiaries of any federally-funded program or activity. Finally, Plaintiffs do not allege that they were subjected to discrimination in connection with such a program or activity. Plaintiffs have therefore failed to state a claim of discrimination in violation of Title VI. *See McCrudden v. E-Trade Fin. Corp.*, No. 13-CV-8837, 2014 WL 3952903, at *4 (S.D.N.Y. Aug. 12, 2014) (dismissing claim under Title VI because plaintiff who alleged only that the "defendants benefit[ted] directly or indirectly [from] Government, low cost funding" failed to allege any of the elements required to state a claim); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 527 (S.D.N.Y. 2013) (dismissing discrimination claim under Title VI because "[p]laintiff's conclusory allegations that *inter alia*, his professors 'blatantly discriminated against all white males,' and that 'he felt the hostility of his professors towards him because of his sex,'" were not sufficient to state a claim).

Plaintiffs' claims under Title VI are therefore dismissed for failure to state a claim.

### iv. Title VIII

Title VIII provides for the compilation of voting and voter registration statistics. 42 U.S.C. § 2000f ("The Secretary of Commerce shall promptly conduct a survey to compile registration and voting statistics in such geographic areas as may be recommended by the Commission on Civil Rights."). As such, Title VIII is not a proper basis for Plaintiffs' claims. *See Roy v. U-Haul*, No. 14-CV-2846, 2015 WL 375664, at *3 n.2 (D.N.J. Jan. 28, 2015) (dismissing claims brought by plaintiff who alleged that defendant U-Haul violated, *inter alia*,

Title VIII by denying plaintiff access to personal property due to his race and stating that Title VIII "concern[s] voting and [thus] ha[s] no bearing on [p]laintiff's claim"). Plaintiffs' claims under Title VIII are therefore dismissed.

### d. 42 U.S.C. § 1983

Plaintiffs indicate that some or all of their claims are asserted under 42 U.S.C. § 1983. (Compl. 11.)

A claim for relief pursuant to 42 U.S.C. § 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law." 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Int'l. Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a nominally private entity may be attributed to the state, satisfying the state action requirement, if:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's

> functions are "entwined" with state policies ("the joint action test"
> or "close nexus test"); or (3) when the entity "has been delegated a
> public function by the state," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)); *see McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (indicating that the same tests govern whether the conduct of a private person constitutes state action for purposes of § 1983). Each of the three avenues requires a fact-specific inquiry into the challenged conduct, and in order to find state action, a court must determine that the specific actions of which a plaintiff complains can fairly be deemed that of the state. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (1978)) (examining public function test, noting that the function performed by the private entity must have historically been "an exclusive prerogative" of the state); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491–92 (2d Cir. 2009) (examining joint action test, noting that state action cannot be premised solely on subjection to state regulation, funding, licensing or even state creation); *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 349–50 (E.D.N.Y. 2013) (examining compulsion test).

Plaintiffs fail to allege facts from which the Court can infer that any of the Defendants engaged in state action under any of the applicable tests. Moreover, several courts in this Circuit have found that public libraries are not state actors for purposes of section 1983. *See Neptune v. Brooklyn Pub. Library*, No. 12-CV-5948, 2012 WL 6094140, at *2 (E.D.N.Y. Dec. 7, 2012) ("[T]he Brooklyn Public Library does not act under color of state law." (citing *Breytman v. N.Y. Pub. Library*, No. 05-CV-10453, 2007 WL 541693, at *2 (S.D.N.Y. Feb. 21, 2007))); *Breytman*, 2007 WL 541693, at *2 ("[T]he New York City Library is not a governmental institution." (citations omitted)); *Gilliard v. N.Y. Pub. Library Sys.*, 597 F. Supp. 1069, 1074–75

14

(S.D.N.Y. 1984) ("[Plaintiff's] bare assertion that the Library is a 'quasi-governmental entity' is not enough to overcome a judicial determination of the Library's independence from the State." (citing *N.Y. Pub. Library v. PERB*, 357 N.Y.S.2d 522, 525 (App. Div. 1974), *aff'd*, 374 N.Y.S.2d 625 (1975))).

Plaintiffs have therefore failed to state a claim pursuant to section 1983.

### e. Universal Declaration of Human Rights

Plaintiffs allege that Defendants violated Articles 18, 19, 26 and 27 of the Universal Declaration of Human Rights. (Compl. 10.) Despite the "moral authority" of this document, it does not "impose obligations as a matter of international law" nor does it provide a private right of action. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734–35 (2004) (explaining that Universal Declaration of Human Rights is an international agreement that does not give rise to legal obligations because it is merely a "statement of principles"); *see also United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action."); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) ("[I]t does not appear that the Geneva Convention or the Declaration of Rights are in fact treaties in force in the United States."); *Chinloy v. Seabrook*, No. 14-CV-350, 2014 WL 1343023, at *4 (E.D.N.Y. Apr. 3, 2014) (collecting cases). Plaintiffs' claims based on violations of the Universal Declaration of Human Rights are therefore dismissed for failure to state a claim.

### f. Leave to amend

Plaintiffs' claims under Title II, Title VI and section 1983 are dismissed without prejudice. Should Plaintiffs wish to pursue discrimination claims under Title II, Title VI or section 1983, Plaintiffs are granted thirty (30) days' leave to file an amended complaint in

15

accordance with this Memorandum and Order. The amended complaint must contain a brief factual description of each claim asserted and, for each claim, Plaintiffs must indicate whether they allege discrimination on the basis of their race, color, religion or national origin. For each defendant named in the caption of the amended complaint, Plaintiffs must include a brief description of what that defendant did or failed to do, and how that act or omission caused Plaintiffs' injury. The amended complaint must also allege facts sufficient to support a plausible inference that each defendant intended to discriminate against Plaintiffs due to their race, color, religion or national origin.[6] Plaintiffs may not rely on legal conclusions and must allege clear and concise facts to support each of their claims. *See* Fed. R. Civ. P. 8(a). The facts relevant to each claim should be alleged in chronological order by date. Each event should be described in a separate numbered paragraph and Plaintiffs must provide the dates and locations of all relevant events. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.

---

[6] The Court notes that private individuals who assert claims under Title II may only seek injunctive relief and are not entitled to money damages. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968); *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004).

## III. Conclusion

For the foregoing reasons, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and for failure to conform to the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure. Plaintiffs are granted thirty (30) days' leave to file an amended complaint in accordance with this Memorandum and Order. If Plaintiffs fail to file an amended complaint within thirty (30) days, the Court shall dismiss this Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: November 20, 2015
       Brooklyn, New York